IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES DUFF, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. H-18-271 |
| | § |
| HILLIARD MARTINEZ GONZALES, LLP, | § |
| *et al.*, | § |
| | § |
| Defendants. | § |

**MEMORANDUM AND OPINION**

**I.    Background**

    **A. The Allegations In The Complaint**.

Charles Duff sued his former employer, Hilliard Martinez Gonzalez, LLP, a law firm in Corpus Christi, Texas, and two partners, Robert Hilliard and Catherine Tobin, who allegedly made the financial decisions for the firm. (Docket Entry No. 1). Duff was hired in August 2010 to serve as the chief financial officer for Hilliard Martinez Gonzales. *Id.* at ¶ 9. Duff alleges that in April 2015, Robert Hilliard agreed to pay him a bonus of "half a million" for his contributions and service, from money the law firm expected to get from cases it settled with General Motors. *Id.* Duff alleges that on June 10, 2015, he and Robert Hilliard signed a "deferred compensation agreement," under which the firm would put $800,000 for Duff into an account associated with the agreement in four $200,000 installments. *Id.* Duff also alleges that the firm agreed to pay him a bonus tied to the General Motors settlement funds, but separate from the contributions-and-service bonus. *Id.*

In the fall of 2016, Duff was assigned the task of managing the General Motors settlement funds, increasing his workload. He alleges that he accepted the added work because of the bonus

1

he believed he would receive. *Id.* at ¶ 10. When Duff sought assurance from Robert Hilliard that the deferred compensation agreement was still in force, Robert Hilliard allegedly told Duff, "I will take care of you brother." *Id.*

Robert Hilliard did not give Duff a bonus in December 2016 or January 2017. *Id.* That month, Duff brought the bonus issue to Catherine Hilliard's attention. *Id.* at ¶ 11. Catherine Hilliard told Duff that she and Robert Hilliard had considered paying Duff a bonus but did not do so because they wanted it to be "substantial," which required waiting until after the law firm collected the General Motors funds. *Id.* Duff alleges that Catherine Hilliard acknowledged that he would also receive $500,000 for his contributions and service to the law firm. *Id.*

In the spring of 2017, Duff told the Hilliards that the firm had collected most of the General Motors settlement funds. *Id.* at ¶ 12. Duff alleges that he asked Robert Hilliard to insulate the collected settlement funds from creditors or from bankruptcy, to protect his deferred compensation agreement from what he saw as Robert Hilliard's needless spending. *Id.* Robert Hilliard allegedly agreed to do so, but he did not. *Id.* Duff alleges that in July 2017, he asked Robert Hilliard to loan him 90% of his deferred compensation account balance, to protect the funds in the account. *Id.* at ¶ 13. The loan was not made. *Id.* Hilliard Martinez Gonzales did not pay Duff $500,000 after the General Motors settlement funds were collected, instead awarding Duff $5,000. *Id.* at ¶ 14. After Duff retained counsel to enforce the deferred compensation agreement, he was terminated on November 28, 2017. *Id.*

**B.     The Motion To Dismiss**.

Duff asserts claims for violations of ERISA, 29 U.S.C. § 1132, and under Texas state law for breach of contract, fraud, breach of fiduciary duty, promissory estoppel, and unjust enrichment.

2

He seeks damages and an injunction. The defendants have moved to dismiss under Rule 12(b)(6), asserting that the complaint fails to state a plausible claim under ERISA and arguing that the court should decline to exercise jurisdiction over the state-law claims if it dismisses the federal ERISA claim. (Docket Entry No. 7). Duff responded, the defendants replied, and Duff sur-replied. (Docket Entries No. 12, 13, 14).

Based on the pleadings, the motion, response, reply, and sur-reply, the record, and the applicable law, the court dismisses the ERISA claim, with prejudice because amendment would be futile, declines to exercise jurisdiction over the state-law claims, and dismisses them, without prejudice, so that they might proceed in the state court. The reasons are explained below.

## II. The Applicable Legal Standards

### A. Rule 12(b)(6) Motions to Dismiss.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

3

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quoting *Twombly*, 550 U.S. at 558) (internal quotation marks and alteration omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could

be granted. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (citing *Stripling v. Jordan Prods. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

**B.     ERISA**.

The ERISA statute defines the retirement, health, severance, compensation, or other employee benefit plans it covers; with preemptive force. The statute provides that:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Under ERISA, every employee benefit plan must:

> (1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,
>
> (2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),
>
> (3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and
>
> (4) specify the basis on which payments are made to and from the plan.

29 U.S.C. § 1102.

The cases provide details about the criteria for an ERISA plan:

5

The Supreme Court in *Fort Halifax Packing Co.* [*v. Coyne*, 428 U.S. 1 (1987)] defined an ERISA plan in terms of the administrative activities required to coordinate and provide benefits under the plan, holding that an ERISA plan covers "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." A one-time benefit, on the other hand, such as a "one-time, lump-sum payment triggered by a single event," a payment that "requires no administrative scheme whatsoever to meet the employer's obligation" to pay the employee, is not a plan as defined by ERISA. In *Fort Halifax*, a Maine statute required employers who relocated or terminated their business to pay "employees for severance pay at the rate of one week's pay for each year of employment by the employee" in the business. The employer was to make this payment "within one regular pay period after the employee's last full day of work." The Court looked to "the plain language of ERISA's pre-emption provision, the underlying purpose of that provision, and the overall objectives of ERISA itself" to determine that the statute did not regulate plans as defined by ERISA. With respect to the plain language, the Court observed that ERISA "does not refer to state law relating to 'employee benefits,' but rather 'employee benefit plans.'" Although "the words 'relate to' should be construed expansively," Congress pre-empts only those laws that relate to plans. The Court next asked whether preemption of Maine's severance statute would "further the purpose of ERISA pre-emption" and meet ERISA's overall objectives—whether it would help to "establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of benefits" and prevent "differing regulatory requirements in differing States" relating to the administration of plans. The Court observed,

> Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.

And the Court concluded,

> The Maine statute . . . creates no impediment to an employer's adoption of a uniform benefit administration scheme. Neither the possibility of a one-time payment in the future, nor the act of making such a payment, in any way creates the potential for the type of conflicting regulation of benefit plans that ERISA pre-emption was intended to prevent.

*Crowell*, 541 F.3d at 303–04.

A recent Fifth Circuit case adds more details. In *Gomez v. Ericsson, Inc.*, 828 F.3d 367 (5th

6

Cir. 2016), the court analyzed whether ERISA covered a severance plan, as follows:

> [S]ome severance payment plans [fall] outside the scope of ERISA. *See, e.g., Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962–63 (5th Cir. 1992) (holding that a lump sum severance payment, contingent on a single event that may never occur, is not a "plan" for purposes of ERISA); *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 168, 176 (5th Cir. 1989) (holding that a one-time procedure by which "employees could opt for a severance payment in lieu of preserving their seniority and rehire rights" during layoffs at a particular plant was not an ERISA plan because it did not require any ongoing administration).
>
> How to tell the difference? The fault line can be found in the Supreme Court's decision in *Fort Halifax*. Unlike all the cases just cited, *Fort Halifax* did not consider a particular employer's severance plan. It instead considered whether ERISA excused a poultry plant that did not have its own severance policy from complying with a Maine law that required "one-time severance payment[s] . . iuk. in the event of a plant closing." *Fort Halifax*, 482 U.S. at 3–4, 107 S.Ct. 2211. The Supreme Court rejected the employer's argument for federal preemption on the ground that the state "requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12, 107 S.Ct. 2211. That absence meant that two of the important ERISA interests were not implicated as there was no administration of benefits that might give rise to "employer abuse" (*id.* at 16, 107 S.Ct. 2211), nor any risk of "conflicting regulation of benefit plans" (*id.* at 14, 107 S.Ct. 2211).
>
> It is thus the existence or nonexistence of an "ongoing administrative program" (*id.* at 11, 107 S.Ct. 2211) that is the key determinant of whether severance plans are governed by ERISA. *Clayton*, 722 F.3d at 296. Even for plans that result in only a lump-sum payment, that administrative scheme can be found in a number of other features that require discretion: the eligibility determination; calculations of the payment amount (such as deductions and detailed formulas); the provision of additional services beyond the severance payment (such as insurance); and the establishment of procedures for handling claims and appeals. *See Fort Halifax*, 482 U.S. at 9, 107 S.Ct. 2211 (mentioning "determining the eligibility of claimants" and "calculating benefit levels" among other indicia of an administrative scheme); *Clayton*, 722 F.3d at 296 (discussing "eligibility discretion" as evidence of an administrative scheme); *Wilson*, 254 Fed. Appx. at 283–85 (noting that the "detailed formulas for calculating plan benefits" and the establishment of "specific administrative procedures" suggested that an administrative scheme was required); *Suda*, 2006 WL 1049224, at *1 (determining that the subjection of a severance allowance to a "variety of deductions" and the additional provision of "ongoing health and life insurance, relocation, and educational aid" all required an ongoing administrative scheme).

828 F.3d at 371–372.

In *Gomez*, the Fifth Circuit held that "administrative activity was abundant" in the plans at issue, which were ongoing on a large scale, covering over 10,000 employees across the country; did not rest on the occurrence of a single event; and required the administrator to exercise discretion, including to determine the eligibility issue of whether there was a good reason for an employee's voluntary resignation, the benefits amount for each employee based not only on years of service but also on applying offsets and deductions, and monitoring obligations over payment. *Id.* at 373. In contrast, when a deferred compensation arrangement in an employment agreement called for a predetermined benefit or a payment based on a one-time calculation using a fixed formula, even if it was to be paid over time, that did not "amount to an administrative scheme." *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 451 (5th Cir. 2013) (quoting *Tinoco v. Marine Chartering Company, Inc.*, 311 F.3d 617, 622 (5th Cir. 2002)). And because the payment amount was fixed, there was no need for discretionary decisions on the part of the employer or an administrator. A triggering event that can be easily ascertained, or when the basis of the termination would change the benefits due an employee, a minimal quantum of discretion is not enough to turn a severance agreement subject to state law into an ERISA plan. *Id.* at 453.

## III. Analysis

### A. The Documents the Court May Consider in Deciding the Motion to Dismiss.

Duff argues that the court may not consider the documents the defendants attached as Exhibits A to F to the motion to dismiss, unless the motion is converted into one for summary judgment. (Docket Entry No. 12). The defendants respond by pointing to cases that permit a court to consider, in deciding a Rule 12(b)(6) motion, documents that the plaintiff refers to in its complaint

and are central to the claim, and that the defendant attaches to a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The defendants have the better argument.

As a general rule, a court is limited to considering the contents of the pleadings and attachments thereto in deciding a Rule 12(b)(6) dismissal motion, and the defendants moved only under that Rule, and not also under Rule 12(b)(1). But there is a well-recognized exception that permits courts also to consider "[d]ocuments that a defendant attaches to its motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)). The courts emphasize that the documents may assist the "plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. In ERISA suits in particular, courts consider documents alleged to constitute or show the ERISA plan alleged or referred to in the complaint and attached to a motion to dismiss. *See Villareal*, 814 F.3d 763, 766-767; *Bailey v. CIGNA Ins. Co.*, 87 Fed. Appx. 347, 348 (5th cir. 2004) (considering Enrollment Guide and Summary Plan Description in granting a motion to dismiss for failure to state an ERISA claim).

Duff alleges that the June 10, 2015 documents he signed created an ERISA deferred compensation plan. (Docket Entry No. 1 at ¶ 9). He alleges that both before and after that date, the defendants promised him payment under that agreement and promised him a $500,000 bonus. *Id.* The defendants assert that contrary to Duff's complaint allegations, there *is* no June 10, 2015 deferred compensation agreement document. (Docket Entry No. 7 at 3). Instead, Hilliard signed three documents on behalf of Robert C. Hillard, LLC on that date: a director's resolution, an

9

adoption agreement, and a benefit class agreement. (Docket Entry Nos. 7-2, 7-3, 7-4). The adoption agreement "adopts" a "Law Firm Prototype Deferred Compensation Plan Document" and proposed to rename it the "Deferred Bonus Plan of Robert C. Hilliard, LLP" and designate it as a "top hat plan." (Docket Entry No. 7-3). Exhibit F is a similar prototype form for the "Optcapital CaR Plan," (Docket Entry No. 7-6), which Duff apparently refers to in his complaint, (Docket Entry No. 1, ¶ 13). Duff himself attaches to his sur-reply a copy of a "Personal Fund Agreement" relating to the Hilliard law firm as a participant in the Optcapital CaR Plan and to Duff as a participant in the "Deferred Bonus Plan of Robert C. Hilliard, LLP." (Docket Entry No. 14-2). This document, however, is signed by Duff, but not by Hilliard or Optcapital, LLC. *Id.* at 4. The attachment, an investment advisory agreement, is dated March 2014 and is between E&G Advisors, LP and Optcapital, LLC. It does not refer to either Duff or to the Hilliard Martinez Gonzalez law firm. *Id.* at 5.

Because the documents are referred to in Duff's complaint and are central to his claim, the court may consider them in deciding the motion to dismiss without converting it to one seeking summary judgment. *See Villareal*, 814 F.3d 766–757; *Arnett v. Aetna Life Ins. Co.*, No. CV H-15-2723, 2016 WL 6883203 at *3 (S.D. Tex. April 14, 2016).

### B. The Agreement Underlying Duff's ERISA Claim Is Not An ERISA Plan

#### 1. Discovery Is Not Needed For This Determination.

Duff asks for before the court decides the motion to dismiss, if the court considers the documents attached to the motion. (Docket Entry No. 12 at 6). The defendants respond that there is no need for discovery, particularly unspecified discovery, to determine whether there is an ERISA plan. (Docket Entry No. 13 at 3).

The court agrees that discovery is neither required nor helpful. The pleadings, the motion and briefs, the documents properly considered, and the applicable law, together provide the type of record that courts regularly rely on in deciding whether ERISA applies to an employee-benefit scheme. *Bailey*, 87 F. App'x 347, 348 (5th Cir. 2004); *Marrero v. Willbros Grp., Inc.*, No. 4:13-CV-0243, 2013 WL 5440595, at *3 n.2 (S.D. Tex. Sept. 25, 2013). Duff has not specified what added discovery he might need, or why this case is different. No discovery is needed for the court's decision.

### 2. The Criteria For An ERISA Plan Are Not Met.

The defendants argue that the promises Duff alleges and the documents he identifies show that the existence and terms of an ERISA plan do not meet the criteria needed for ERISA to apply. The court agrees.

Duff alleges two agreements. In the first, the defendants agreed to pay Duff a bonus of $500,000 for work he completed when the firm settled cases with General Motors. (Docket Entry No. 1 at ¶ 9). In the second, the defendants agreed to pay Duff four $200,000 installments on four different dates over a four-year period. *Id.*; (Docket Entry No. 7-2). Duff does not allege that the first agreement was memorialized. He alleges that the second agreement was memorialized by the directors' resolution and incorporated documents. (Docket Entry No. 7-2). Because Duff's ERISA claim is based on only the second agreement, (Docket Entry No. 1 at ¶¶ 15–19), the question is whether this second agreement meets the criteria of an ERISA plan.

The director's resolution states that the defendants agree to pay Duff four $200,000 installment payments. (Docket Entry No. 7-2). This document does not meet the criteria of an ERISA plan because it does not create an "ongoing administrative program." *Gomez*, 828 F.3d at

11

371 (quoting *Fort Halifax*, 482 U.S. at 11). It states:

> **BE IT FURTHER RESOLVED** that under the Plan the Company shall make the following Contributions for the benefit of Chuck Duff, its CFO:
>
> | Contribution Amount | Effective Date |
> |---|---|
> | $200,000 | Effective Date of Plan |
> | $200,000 | January 1, 2016 |
> | $200,000 | January 1, 2017 |
> | $200,000 | January 1, 2018 |

(Docket Entry No. 7-2 at 2). Unlike the plans found to be covered by ERISA in *Gomez* and similar cases, the directors' resolution does not administer "hundreds of different events" or require an administrator "to exercise a great deal of discretion." *Gomez*, 828 F.3d at 372. The installment payment provision does not require "continuing monitoring obligations over the payment," the "setoff of severance amounts received against . . . future pay," or the handling of insurance coverage "eligibility, length of coverage, cost, and whether the coverage terminates" issues. *Id.* at 372. The directors' resolution leaves no room for administrative activity or discretion. It simply requires four lump-sum payments, each triggered by a predetermined date.

Because the specific agreement Duff challenges is not a "plan" under ERISA, Duff cannot bring an ERISA claim to recover the final $200,000 installment that he alleges the defendants refused to pay him as promised. Duff's ERISA claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### C. Supplemental Jurisdiction Is Not Appropriate

Having dismissed Duff's sole federal law claim, the court must determine whether to exercise supplemental jurisdiction over his remaining state law claims. In making this determination, the court considers the statutory factors in 28 U.S.C. § 1367(c) and the common law factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros. Holding v. Dayco*

*Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). The statutory factors favor declining supplemental jurisdiction in this case.

Even when, as here, the state-law claims do not raise novel or complex issues of Texas law, supplemental jurisdiction may be declined when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . ." *Brookshire Bros.*, 554 F.3d at 602. Though this rule "is neither mandatory nor absolute," the common law factors also weigh in favor of declining supplemental jurisdiction.

At this stage of the litigation, "hardly any federal judicial resources, let alone a significant amount of resources, ha[s] been devoted to the district court's consideration of the Texas state law claims (or to any claims)." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). "There would be no need for either party to duplicate any research, discovery, briefing, hearings, or other trial preparation work, because very little ha[s] been done at [this] point." *Id.*; *Brookshire Bros.*, 554 F.3d at 603. Because the defendants are not located in Harris County, the convenience factor does not weigh towards keeping the case in Houston. *Enochs*, 641 F.3d at 160. Because only state-law claims remain, it would not prejudice either party for the court to decline jurisdiction over those claims. *Id.* Finally, "comity demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.'" *Id.*

Because the common-law factors and the majority of the statutory factors weigh against exercising supplemental jurisdiction, the court declines to exercise supplemental jurisdiction over

13

any state-law claims Duff asserts.

## IV. Conclusion

The defendants' motion to dismiss the ERISA claim is granted, with prejudice, and the state-law claims are dismissed without prejudice. An order of dismissal is separately entered.

SIGNED on May 2, 2018, at Houston, Texas.

                                            Lee H. Rosenthal
                                   Chief United States District Judge